Dickman, J.
It is not claimed by the defendant in error that United States notes, commonly called “ greenbacks, ” are directly or indirectly subject to taxation, by or under state or municipal authority. They are obligations of the United States, and that their value may not be impaired, and that they may promote the object for which they are issued, they should be beyond the taxing power of the states. The authority to. borrow money on the credit of the United States is among the enumerated powers expressly vested by the constitution in the national government, and, as within the sphere of those powers, that government has been made supreme, the states cannot, by taxing its notes or other obligations, impair its ability to raise money for necessary governmental • purposes. Bank v. Supervisors, 7 Wall. 26; The Banks v. Mayor, 7 Wall. 16. The constitutional grant to borrow money negatives, in itself, the riakt of the states to control or restrain, by any *641 method, the exercise of the granted power. Yet, +o preserve the credit and value of the national securities and obligations, congress has enacted, by section 3701 of the Revised Statutes of the United States that, “ all stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by or under state or municipal or local authority.”
The question that engages our attention at the' outset is, whether subdivision 16, of section 2737, of the Revised Statutes of Ohio, is, in its operation and effect, in conflict with the meaning and intention of section 3701 of the Revised Statutes of the United States. By the tax-laws of Ohio, each person required to list property must annually make out and deliver to the assessor, a statement, of all the personal property, moneys, credits, investments in bonds, stocks, joint stock companies, annuities, or otherwise, in his possession, or under his control, on the day preceding the second Monday of April of that year, which he is required to list for taxation as owner, holder or otherwise. As provided by subdivision 16, of section 2737, the person listing must truly and distinctly, set forth in such statement, “ the monthly average amount or value, for the time he held or controlled the same, within the preceding year, of all moneys, credits, or other effects, within that time invested in or converted into bonds or other securities of the United States or of this state, not taxed, to the extent he may hold or control such bonds or securities on said day preceding the second Monday of April.”
As conclusions of fact found by the court of common pleas, the plaintiff' in error, on the Saturdays preceding the second Monday of April, from the year 1881 to the year 1885, inclusive, had moneys in varying amounts, on deposit in bank at the town of Cadiz, in Harrison county, to his credit as a general depositor. In each of those years, and on the Saturdays above named, he checked out the balance then standing to his credit, which, at his request, was paid to him in United States securities, commonly denominated “ greenbacks.” These securities he inclosed, on each occasion, in a package with his name *642 thereon, and the officer of the bank placed it in the bank’s safe for him. At n.o time did he carry the securities out of the bank building. In each year, and in the early part of the next week after converting his balances into United States securities, he returned to the bank, opened his package, delivered the contents to an officer of the bank, and the same were placed to his credit as a general depositor. In drawing out the balance due him, it was his design, in each instance, to obtain non-taxable securities and thus evade taxation on, such balance. During the interim between the withdrawal of his balance and his subsequent deposit as a general depositor, he was the absolute owner of all moneys so withdrawn by him; and in no year, did he list any portion of such moneys for taxation; nor did he include in his tax return, the monthly average amount or value, for the time he held or controlled the same within the preceding year, of any moneys, credits, or other effects, within that time invested in or converted into United States securities. But the monthly average amount of moneys, so invested by the plaintiff in error in such securities, within the years respectively preceding the drawing out of such moneys, was the amount so drawn out at the end of the year. This monthly average amount of moneys held and controlled during each year preceding the time of their conversion into United States notes, was placed by the auditor upon the duplicate, which was delivered to the treasurer for collection; and it is contended, that the government securities were thereby indirectly subjected to state taxation, in violation of the act of congress.
It is manifest from an examination of the provisions of subdivision 16 of section 2737 of the Revised Statutes, that it was not the legislative intent, nor does the statute operate, to subject to taxation the treasury notes, or other obligations of the United States. Personal property converted into those securities may be taxable, but the securities are thereafter exempt from taxation. The statute recognizes and enforces the equitable principle that personal property held during a part of the year and then converted into non-taxable securities, should be taxed in proportion to the time it is so held before being thus converted. The owner is required to list for taxation the *643 monthly average amount or value of moneys, credits, or other effects,'during the time he held or controlled the same within the preceding year. A statutory guide for ascertaining such monthly average is afforded in the mode prescribed by section 2740 of the Revised Stotutes, for estimating the average value of the stock in trade which a merchant shall have had, from time to time, in his possession, during the year next previous to the time of making his statement to the assessor. That section provides that the average shall be made up by taking the amount in value on hand, as nearly as may be, in each month of the next preceding year in which the person making such statement shall have been engaged in business, adding together such amounts, and dividing the aggregate amount thereof by the number of months that the person making the statement may have been engaged in business during the preceding year. The monthly average amount or value of moneys, credits, or other effects invested in non-taxable securities being once determined, that amount, upon a reasonable interpretation of the statute, should be taxed for that portion of the year, during which the person listing held or controlled the property in its original shape. If, for example, in the month of October, six months prior to the day as of which property is to be listed for taxation, a citizen of the state should invest a sum of money in United States notes, as it would contravene the federal statute to tax the securities into which the money had been merged, so, to exempt the money from taxation for the six months it had received the protection of the state, wTould be unequal and unjust. Nor can the taxing of money as such up to the time it assumes the form of government notes, or other obligations of the United States, be properly construed as virtually imposing a tax upon those non-taxable securities. The burden of taxation is thrown off, as soon as the taxable personal property is converted into United States securities.
The principle of taxation, for a proportionate period of the year, is embodied in the statutory mode of taxing unincorporated banks and bankers. Persons commencing the business of banking after the day preceding the second Monday of' *644 April — the average value of whose personal property intended to be employed in such business shall not have been previously entered on the assessment list for taxation — are required to pay, into the county treasury, a sum which shall bear the same proportion to the levy for all purposes, on the average value so employed, as the time from the day on which they engaged in such business to the day preceding the second Monday in April next succeeding, shall bear to one year.
While the state statute cannot operate to subject to taxation government obligations known as “ greenbacks,” it could not be effective, in any degree, to bring them into disfavor, or to discourage investment in that class of federal securities. The statute may .aid in preventing persons using United States notes, as a means of fraudulently evading their duty to the state as tax-payers; but, the effect of the statute is to hold out an inducement, or make it an object to permanently convert idle and unproductive taxable property into government obligations, at the beginning instead of the end of the year — to increase the duration of investment — and thus stimulate the demand for such non-taxable securities.
It is urged, however, in argument of counsel, that the method provided in sub-division 16, of section 2737, of the Revised Statutes, for estimating the taxable value of the property therein designated, is in conflict with section 2, of Article XII of the constitution of the state, which requires the passage of laws taxing all property “by a uniform rule according to its true value in money,” in this, that the rule for the valuation of property converted into non-taxable securities, by estimating its monthly average amount or value, is different from that provided for the valuation of other kinds of property, which are assessed according to their value on a specified day. The question raised carries with it the obvious suggestion that property must be returned for taxation at its true value in money at a time when it is a legitimate subject for state taxation, and not when it has ceased to be such, through the act of the owner himself, in seeking an investment in non-taxable securities.
It is true that Article XII is not a grant of power, but a regulation of power already granted — not a delegation of au *645 thority to raise revenue, but a limitation of that power, as conferred by section 1 of article II of the constitution. Baker v. Cincinnati, 11 Ohio St. 534; West. Union Telegraph Co. v. Mayer, 28 Ohio St. 521. But, while the constitution prescribes that all property shall be taxed by a uniform rule, with a view to apportioning the burdens of government, so that each person shall contribute so much as is his reasonable proportion, and no more, it does not prescribe the mode of ascertaining-the taxable valuation of property, or the time as of which the value is to be determined. The method of ascertaining the true value of property in money, and the time as of which the same shall be listed for taxation, have been left to the wisdom of the legislature. “ Whenever it is made a requirement of the state constitution that taxation shall be upon property according to value, such a requirement implies an assessment of valuation by public officers, at such regular periods as shall be provided by law.” Cooley, Const. Lim. 496. And where the constitution contains no provisions upon this subject, “the necessity for valuation,” says the same author, “ is nevertheless implied, though the mode of making it, and the periods at which it shall be made, are left to the legislative discretion.” Ib. See also, Exchange Bank v. Hines, 3 Ohio St. 1, 22.
In the exercise of that discretion, the general assembly, for the purposes of taxation, has provided for estimating the value of certain species of property by different modes and agencies; for ascertaining the value as at different times; and for listing property as of different days. Thus, the person making a tax-return, may exhibit to the assessor certain enumerated articles, and allow him to fix the value thereof, while he must verify by his oath the value of all other items included in his return. The merchant is required to set forth in his return the monthly average value of personal property appertaining to his business, and which he has held during the previous year; the manufacturer, the monthly average value of all articles had on hand during the year, for the purpose of being used in manufacturing; and unincorporated banks and bankers, the monthly average amount of certain specified items owned or standing on their books *646 during the preceding year; while numerous other classes of property are assessed according to their value on a particular day. And while personal property generally must be listed for taxation as of the day preceding the second Monday in April, shares in incorporated banks are listed, as of the Wednesday next preceding the second Monday of May in each year. These and other diversities in valuation, grow out of difficulties necessarily incident to the ascertainment of the true value of jn’operty in money. There are so many influences, tangible and intangible, which cause values to fluctuate from time to time, that absolute equality and uniformity of valuation are unattainable, and an approximation thereto is all that is practicable. But, because of such unavoidable inequalities in valuations for taxation, we are not to conclude that there is any material variation from the principle of taxing all property by a uniform rule, according to its true value in money. Wagoner v. Loomis, 37 Ohio St. 571; National Bank v. Kimball, 103 U. S. 732. Taxation of one class of personal property, based upon an estimate of its monthly average value during the next preceding year, while the value of a different class, on a specified day, is adopted, is not a departure from the rule of uniformity. The application of the principle of average valuation to the business of merchants and manufacturers, has long received the legislative sanction of this state, without, in our judgment, infringing the constitution; and we discover no valid reason why the same principle may not' be applied to the monthly average amount of moneys invested in United States securities. Instead of being at variance with a uniform rule or rate of taxation, it may properly be regarded as an authorized legislative mode of preventing an evasion of the law, and securing a fair basis for an equal and just apportionment to the property owner, of the necessary burdens of taxation. The residue of a merchant’s stock in trade, held at the time when by law he is required to make his tax return, would prove a very deceptive criterion of the taxable personal property held from month to month during the preceding year. “ It has been argued,” says Bartley, C. J., in Exchange Bank v. Hines, supra, “ that stock in trade is subject to a different rule of taxation from that which is imposed *647 on other property. This is a mistake. The difference consists not in the rule or burden of taxation; but simply in the mode of ascertaining the valuation. The principle of valuing by an average has been introduced because stock in trade is constantly changing the article of its investment, and varying in the quantity on hand, from month to month.”
It is clear that it was the design of the plaintiff in error, in annually drawing his balance from the bank, and converting it into United States notes, to avoid the payment of his just proportion of taxes; and that the transaction was, in effect, a fraud upon the revenue. And it is contended that, where the investment in non-taxablc securities is colorable only — not designed to be permanent, but made to evade taxation, and with the predetermined purpose of reconverting the securities at the earliest day after the assessor’s visit — a party cannot in this manner, acquire rights which a court, either of law or equity, will enforce. How far the rights of a party, in a court of law, may depend upon the motives which actuated him in making the investment, the decision of the case at bar does not require us to determine. But it is now well settled that, where a party for the sole purpose of escaping taxes, converts his personal property into United States securities, a court of justice, sitting as a court of equity, will not lend its aid for the accomplishment of any such purpose.
In Mitchell v. Leavenworth County Commissioners, 91 U. S. 206, a party for the purpose óf evading the payment of a tax on his money on deposit, which the law of Kansas required to be listed for taxation March 1, in each year, withdrew, it February 28, from a bank where it was subject to his check, converted it into notes of the United States, and deposited them to his general credit March 3; and the state court passed a decree, dismissing a bill in equity by him filed to restrain the collection of the tax thereon. It was held, Waite, C. J., delivering the opinion of the court, that the decree was correct •; and that, although such notes were exempt from taxation by or under state or municipal authority, a court of equity would not use its extraordinary powers, to promote such a scheme devised for the *648 purpose of enabling a party to escape his proportionate share of the burdens of taxation. See also Albany City Bank v. Maher, 19 Blatchf. 182.
The original action herein was at law, with prayer for a money judgment. But the county treasurer claiming protection under the duplicate, was clothed with power, at any time to distrain sufficient goods and chattels of the defendant, if found within his county, to pay taxes remaining due. The defendant, therefore, in his answer, invoked the equity powers of the court, and prayed that the plaintiff be enjoined from collecting or attempting to collect the amount charged against him on the duplicate. The court rendered judgment for the defendant instead of granting an injunction. But, had the treasurer proceeded to distrain, and had the plaintiff in error sought to enjoin proceedings, it is clear that the latter would have had no standing in a court of equity.

Judgment affirmed,.