The CHIEF JUSTICE
 

 delivered the opinion.of the court.
 

 The general question requiring consideration is whether United States notes eome under another rule in respect of taxation than that which applies to certificates of indebtedness.
 

 The issues of United States notes were authorized by three successive acts. The first was the act of February 25, 1862;
 
 †
 
 the second, the act of July 11, 1862;
 
 ‡
 
 and the third, that of March 3, 1863.
 
 §
 

 Before either of these acts received .the sanction of Congress the Secretary of the Treasury'had been authorized. by the ac$ of July 17, 1861,
 
 ǁ
 
 to issue treasury notes not bearing interest, but payable on demand by the assistant treasurers at New York, Philadelphia, or Boston; and about three weeks later these notes, by the act of August 5, 1861,
 
 ¶
 
 had been made receivable generally for public dues. The amount of notes to be issued of this description was originally limited to fifty millions, but was after-wards, by the act of February 12, 1862,
 
 **
 
 increased to sixty millions.
 

 These notes, made payable on .demand, and receivable for all ■ public dues, including duties on. imports always payable in coin, were, practically, equivalent to coin; and all public disbursements, until after the date of the act last mentioned, were made in coin or these notes.
 

 
 *29
 
 In December, 1861, the State banks (and no others then existed) suspended payment in coin; and it became necessary to provide by law for the use of State bank.notes, or to authorize the issue of notes for circulation under the authority, of the national government. The latter alternative was preferred, and in the necessity thus recognized originated the legislation providing at first for the emission of United States notes, and at a later period for the issue of the national bank currency.
 

 Under the exigencies. of the times it seetns to have been thought inexpedient to attempt any provision for the redemption of the United States-notes in coin. The law, therefore, directed that they should be made payable to bearer at the treasury of the United States, but did'not provide for payment on demand. The period of payment was left to .be determined by the public exigencies. In the meantime the notes were receivable in payment of all loans, and were, until after the close of our civil war, always practically convertible into bonds of the funded debt, bearing not less than five per cent, interest; payable in coin.
 

 The act of February 25,1862, provided for the issue of these notes-to the amount of one hundred and fifty millions of dol-. lars. The act of July 11,1862, added another hundred and fifty millions of dollars to the circulation, reserving, ^however, fifty millions for the redemption of temporary loan, to be issued and-used only when,necessary for that purpose. Under the act of March 3, 1863, another issue of one hundred and fifty millions was authorized, making the whole amount authorized four hundred and fifty millions, and contemplating a permanent circulation, until resumption-of payment in coin, of four hundred mil. lions of dollars.
 

 It is unnecessary here to.go further into the history of these notes, or to examine their relation to the national bank currency. That history belongs.to another place; and the quality of these notes, as legal tenders, belongs to another discussion. It has been thpugbt proper only to advert to the legislation by which these note's .were authorized, in order that their true character may be clearly perceived.
 

 That these noteswere issued under the authority of the United, States, and as a means to ends entirely within the constitutional power of the government, was not seriously questioned upon the argument.
 

 Bút it was insisted that they w ere issued as money■; that their
 
 *30
 
 controlling quality was that of money, and that therefore they were subject to taxation in the same manner, and to the same extent,, as coin issued under like authority.
 

 And there is certainly much force in the argument. It is clear that these notes were intended to circulate as money, and, With the national bank notes,, to constitute th'e credit currency of the country.
 

 Nor is it easy to see that taxation of these notes, used as money,'and held by individual owners, can- control or embarrass'the power of the government in issuing them for circula-’, tion, more than like taxation embarrasses its power in coining and issuing gold and silver money for circulation.
 

 Apart from the quality of legal tender impressed upon them by acts of Congress, of which we now say nothing, their circulation as currency depends on the extent to which they' are received in payment, on the quantity in circulation, and on the credit given to the promises they bear. In these respects they rese.mble the bank notes formerly issued as currency.
 

 But, on the" other hand, it is equally clear that these notes are obligations of the United States. Their name imports'obligation. Every one of them expresses upon its face an engagement of the nation to pay to the bearer a certain sum. The dollar note ,is an engagement to pay a dollar, and the dollar intended is the coined dollar of the United States; a certain quantity in weight and fineness of gold or silver, authenticated as' such by the stamp of the government. No other dollars had before been recognized by-the legislation of the national government as lawful money.
 

 Would, then, their usefulness and value as means to the exercise of the functions of government, be injuriously affected by State taxation ?
 

 ■ It cannot be said, as we have already intimated,’ that the same inconveniences as would arise from the taxation of bonds and other, interest-bearing obligations of the government, would attend the taxation of notes issued for circulation as money. But we cannot say. that no embarrassment would arise from such'taxation. And we think it clearly within the discretion of Congress to determine whether, in view of all the circumstances attending the issue of the notes, their usefulness, as a means of carrying on the government, would be enhanced by exemption from taxation; and within the constitutional ppwer of Congress,
 
 *31
 
 having resolved the question of 'usefulness affirmatively, to provide by law for such exemption.
 

 There remains, then, only this question, Has Congress exercised the power of exemption ?
 

 A careful examination of the acts under which they were issued, has left ho doubt in our minds upon, that point.
 

 The act of February, 1862,
 
 *
 
 declares that “all United States bonds, and other securities of the United States, held by individuals, associations, or corporations, within the United States, shall be exempt from taxation by or under State authority.”
 

 We have already said that these notes are obligations. . They bind the national faith. They are, therefore, strictly securities. They secure the payment stipulated, to the holders, by the pledge of the national faith, the only ultimate security of all national obligations, whatever form they mhy -assume.
 

 And this provision is re-enacted in application'to the second issue of United States notes by the act of July 11,1862.
 
 †
 

 And, as if to remove^ every possible doubt from the intention of Congress, the act of March 3, 1863,
 
 ‡
 
 which provides for the last issue of these notes, omits, in its exemption clause, the word “ stocks,” and substitutes for “‘other securities,” the words “.Treasury notes or United States notes issued 'under the provisidns..of this act.”
 

 It was insisted at the! bar, that a .measure, of exemption in respect to the notes issued under this — different from that provided in the former.acts, in respect to the notes authorized by them — was intended; but we cannot yield our assent to this view. The rule, established in the last act is in no respect ificonsistent with that previously established; It. must be regarded, therefore, as explanatory. It makes specific what was before expressed in general terms.
 

 Our conclusion is, thatUnited States notés are-exempt;' and, at the time the New York statutes were enacted, were exempt from taxation by or under State authority. The judgment of the Court of Appeals must therefore be
 

 Reversed.
 

 †
 

 12 Stat. at Large, 345.
 

 ‡
 

 Ib. 532.
 

 §
 

 Ib. 709.
 

 ǁ
 

 Stat. at Large, 259, § 6.
 

 ¶
 

 Ib. 313, § 5.
 

 **
 

 Ib. 338.
 

 *
 

 12 Stat. 346, § 2.
 

 †
 

 Ib. 546.
 

 ‡
 

 Ib. 709.