NEW JERSEY REALTY TITLE INSURANCE COMPANY, PROS-
ECUTOR–RESPONDENT. v. DIVISION OF TAX APPEALS
IN THE DEPARTMENT OF TAXATION AND FINANCE OF
THE STATE OF NEW JERSEY AND THE CITY OF NEW-
ARK, A MUNICIPAL CORPORATION, DEFENDANTS–AP-
PELLANTS.

Argued January 31, 1949—Decided March 7, 1949.

*Mr. Vincent J. Casale,* argued the cause for the defendant-appellant, the City of Newark (*Mr. Thomas L. Parsonnet,* on the brief).

*Mr. Charles B. Niebling,* argued the cause for the prosecutor-respondent.

A brief, amicus curiae, was filed by leave of the Court, by the Cities of Camden, *Mr. John J. Crean and Mr. Norman Heine,* attorneys, and Trenton, *Mr. Louis Josephson,* attorney.

The opinion of the court was delivered by

OLIPHANT, J. This appeal is from the former Supreme Court which, on certiorari, reversed a judgment of the Division of Tax Appeals sustaining an assessment levied on the property

of respondent pursuant to *R. S.* 54:4–22. The decision of the former Supreme Court was rested on the ground that the tax was not an excise tax, but an ad valorem tax on personal property, and that by taxing a fund composed of exempt property, in this case obligations of the United States which are exempt from state, municipal or local taxation under 31· *U. S. C. A., Sec.* 742 and *R. S.* 54:4–3, is to tax such exempt property. We are not in accord with this interpretation of the statute.

The respondent is a stock insurance company subject to taxation under the cited statute, *R. S.* 54:4–22, *supra*.

The statute requires that the property of such companies, other than life insurance companies, shall be assessed and taxed in the taxing district where its office is situated, upon the full value of its property at the local rate and by the following formula.

There shall be excluded from the value of its property the following property: (a) Real estate and tangible property (which are taxed at the situs by general law); (b) all shares of stock owned by the company; (c) non-taxable property (which includes United States government securities which the state has no power to tax as such); (d) property exempt from taxation under the law of this state.

After excluding the above classes of property, there is deducted from the value of its property so found to be taxable the following items or debits (1) all debts and liabilities certain and definite; (2) the full amount of all reserves for taxes; (3) such proportion of the reserves for unearned premiums, losses, or other liabilities as the full amount of value of *its taxable intangible property* bears to the full amount and value of *all its intangible property.*

The arithmetical result produced by the application of the formula at this point is subject to the following controlling proviso which is integrated into the formula as a whole, that the assessment calculated under such formula shall in no event be less than 15 percent of the paid up capital and surplus in excess of all liabilities of the insurance company as the same are stated in the company's annual statement for the

calendar year next preceding the assessing date and filed
with the Department of Banking and Insurance, less the
amount of the tax assessments against real estate owned by
the company.

The total assets of the respondent as shown by its return
were $774,972.98 which included the following items which
were excluded under the formula, exempt property $461,682.25,
mortgages on New Jersey real estate $129,175.32; title plant
$47,500.00, cash on deposit $136,594.74; other cash items and
prepaid charges $5,981.89, making a total of excludable prop-
erty of $770,454.20, which left a total of taxable intangibles
of $4,583.78. The deduction for debts and liabilities, certain
tax reserves and proportionate loss of reserves was $54,690.22
which left no balance of assessable property subject to tax at
the local rate.

The respondent's capital stock and surplus on the assessing
date as shown by its annual statement for the calendar year
1943 filed with the Department of Banking and Insurance to-
taled $547,462.93. The assessment placed upon the net worth of
the respondent by the city assessor of Newark was $75,700.00.

The point made by the appellant city is that the tax imposed
by *R. S.* 54:4–22 *as amended by P. L.* 1938, *Chap.* 245 is not an
ad valorem tax against the property of the respondent, as
was found by the Supreme Court.

It is well settled that a state has no power to assess
against a corporation a tax which is essentially a property or in-
come tax (whether it purports to be laid directly upon property
or upon capital stock) as distinguished from franchise, privilege
or excise taxes without allowing a deduction for sums in-
vested in securities of the United States or from income
derived from such sources. 51 *Amer. Juris., sec.* 797 and the
cases cited there.

But it is equally well settled that a state has the pow-
er to levy a tax on a legitimate subject, such as corporate
franchises or property, measured by net assets or income,
even though there is included, in the measure of the tax, tax-
exempt federal instrumentalities or the income derived there-
from. A state tax so measured is not an infringement of the

immunity from taxation. *Educational Films Corp. v. Ward,* *282 U. S. 379, 75 L. Ed. 400, 51 Sup. Ct. 170; Tradesmens* *National Bank v. Oklahoma Tax Commission,* 309 *U. S.* 560, *p.* 564; *84 L. Ed. 947, p. 951, 60 Sup. Ct. 688.*

■ We have concluded that the tax levied under this statute is not an ad valorem tax or property tax but rather is a valid tax upon the net worth of the company even though there be included in the calculation of the net worth certain exempt federal securities or their income.

The respondent contends that the case of *Missouri Ins. Co.* *v. Gehner, 281 U. S. 313, 74 L. Ed. 870, 50 Sup. Ct. 326,* is controlling. The Court in that case held that where the statute discloses a purpose as a general rule to omit from taxation sufficient assets of the insurance company to cover their legal reserve and unpaid policy claims and it is competent for the state to permit a less reduction or none at all, then where the ownership of United States bonds is made the basis of denying the full exemption which is accorded those who own no such bonds, this amounts to an infringement of guaranteed freedom from taxation. We do not think this case is controlling in the present situation.

As we read *R. S.* 54:4–22 *as amended,* it does not tax the capital or surplus as such. The proviso in the statute simply fixes a floor below which the assessment under the formula is not permitted to go. In the operation of the formula an assessment in excess of 15 percent of the sum of paid-up capital and surplus is possible and when so found is taxable at the local rate. However when a minus sum is the result of the operation of the formula then the assessment is recalculated and the exclusions and deductions are accordingly reduced so as to produce an assessment against the intangible property which is not less in amount than 15 percent of the paid-up capital and surplus.

In the Gehner case, supra, it is true that similar exclusions and exemptions were established by state law and that the legislature reserved the right to alter or change these exemptions by law but in the formula set up in the Missouri statute the exemptions, exclusions and deductions were, for

the purpose of arithmetical calculation, fixed factors which had the effect of throwing the weight of the tax onto the tax exempt federal securities to the point of discrimination. Compare *Schuylkill Trust Co. v. Pennsylvania, 296 U. S.* 112, *p.* 120, 80 *L. Ed.* 91, 56 *Sup. Ct.* 31.

Such is not the situation presented by *R. S.* 54:4–22. While it is true that the legislature authorizes that certain property shall be excluded and exempted from the assessment and also permits certain other deductions and that our legislature, in the exercise of its reserve power, may alter or change any and all such items, they are not at the point of assessment fixed factors in the arithmetical taxing formula but are variable factors, because the legislature went one step further by the proviso which authorizes that these various items shall be accordingly reduced with the ultimate purpose to produce an assessment of the net worth of all the intangible property of the insurance company which in the aggregate may not be less in amount than 15 percent of the paid-up capital and surplus as defined by the statute. The assessment may equal or exceed 15 percent of the paid-up capital and surplus, and does not necessarily have to be precisely the same, but it can not be less in amount than 15 percent of the paid-up capital and surplus.

The tax assessor under the law is required to apply the statute without any discrimination and in such a way that there is no infringement of the constitutional immunity. Compare *Macallen Co. v. Mass., 279 U. S.* 620, 73 *L. Ed.* 874, 49 *Sup. Ct.* 432; *Miller v. Milwaukee, 272 U. S.* 713, 71 *L. Ed.* 487, 47 *Sup. Ct.* 280; *Educational Films Corp. v. Ward, supra; Pacific Co. v. Johnson, 285 U. S.* 480, 76 *L. Ed.* 893, 52 *Sup. Ct.* 424.

If the assessment is made without discrimination then it makes no difference whether the corporate property which is the result of the tax may chance to include federal exempt securities. The constitutional power of one government to reach a permissible object of taxation may not be curtailed because of the indirect effect which the tax may have upon such securities. *Educational Films Corp. v. Ward, supra, at* 389.

This seems to be the applicable rule whether the taxing statute is a franchise tax or a tax upon the net worth of the company, which latter we hold the tax under the statute before us to be. The statute is not designed to tax capital or surplus as such or any assets alleged to be included therein. The proviso in question merely fixes, as stated, a floor below which the assessment on the intangible property representing net worth shall not be permitted to go. The statute being subject to the constitutional prohibition against discrimination with respect to federal securities contains a sufficient standard to meet the test set forth in *Gaines v. Hudson County Assessors,* 37 *N. J. L.* 12 *(Sup. Ct.* 1873*); City of Hoboken v. Martin,* 123 *N. J. L.* 442 *(E. & A.* 1939*).*

The tax assessor is not granted an unlimited discretion. It is perfectly obvious that as a practical matter the legislature could not fix a detailed standard regulating the manner by which the exclusions, exemptions and deductions should be scaled down, which standard could operate with precision under all the possible variations that could be presented in the corporate organization, investment portfolios, properties owned and policy liabilities of the stock insurance companies subject to taxation under the act.

The judgment of the former Supreme Court is reversed and that of the Division of Tax Appeals affirmed.

*For reversal:* Chief Justice VANDERBILT and Justices CASE, OLIPHANT, BURLING, and ACKERSON—5.

*For affirmance:* None.