## NEW JERSEY REALTY TITLE INSURANCE CO. *v.* DIVISION OF TAX APPEALS OF NEW JERSEY ET AL.

No. 147.   Argued December 13, 1949.—Decided February 6, 1950.

*Walter Gordon Merritt* argued the cause for appellant. With him on the brief were *H. Gardner Ingraham* and *Charles B. Niebling.*

*Vincent J. Casale* argued the cause for appellees. With him on the brief for the City of Newark, appellee, was *Charles Handler.*

MR. JUSTICE CLARK delivered the opinion of the Court.

A taxing district of New Jersey has levied against the intangible personal property of a domestic corporation an assessment for the taxable year 1945 in the amount of 15 per cent of the taxpayer's paid-up capital and surplus, computed without deducting the principal amount of certain United States bonds and accrued interest thereon. This appeal challenges the validity of the assessment and of the tax statute under which it was levied, on the ground of conflict with Art. I, § 8 of the Federal Constitution, by which Congress is authorized "To borrow Money on the credit of the United States," and with § 3701 of the Revised Statutes (1875), 31 U. S. C. § 742, which generally exempts interest-bearing obligations of the United States from state and local taxation.

The assessment in question was levied under § 54:4–22 of the Revised Statutes of New Jersey (1937), as amended by Laws of 1938, c. 245.[1] N. J. Rev. Stat. Cum. Supp., Laws of 1938, 1939, 1940, § 54:4–22. That section provided as follows:

"Every stock insurance company organized under the laws of this state, other than a life insurance company, shall be assessed and taxed in the taxing district where its office is situated, upon the full amount or value of its property (exclusive of real estate and tangible personal property, which shall be separately assessed and taxed where the same is located, and exclusive of all shares of stock owned by such insurance company and exclusive of nontaxable property and of property exempt from taxation), deducting from such amount or value all debts and liabilities certain and definite as to obligation and amount, and the full amount of all reserves for taxes, and such proportion of the reserves for unearned premiums, losses and other liabilities as the full amount or value of its taxable intangible property bears to the full amount or value of all its intangible property; *provided, however,* the assessment against the intangible personal property of any stock insurance company subject to the provisions of this section shall in no event be less than fifteen per centum of the sum of the paid-up capital and the surplus in excess of the total of all liabilities of such company, as the same are stated in the annual statement of such company for the calendar year next preceding the date of such assessment and filed with the department of banking and insurance of the state of New Jersey, after deducting from such total of capi-

---

[1] Section 54:4–22 is included under "Title 54. Subtitle 2. Taxation of Real and Personal Property in General."

tal and surplus the amount of all tax assessments against any and all real estate, title to which stands in the name of such company.

"The capital stock in any such company shall not be regarded for the purposes of this act [section] as a liability and no part of the amount thereof shall be deducted, and the person or persons or corporations holding the capital stock of such company shall not be assessed or taxed therefor. No franchise tax shall be imposed upon any insurance company included in this section." (Italics added.) [2]

A corporation subject to this section was taxable at the rate of the local taxing district.

Appellant is New Jersey Realty Title Insurance Company, a stock insurance company of New Jersey with its office in the City and taxing district of Newark, County of Essex, New Jersey. For the year 1945 the City of Newark levied an assessment of $75,700 on appellant's intangible personal property and collected from it a tax of $3,906.12 computed thereon.

Appellant had filed a return [3] based on its balance sheet at the close of business September 30, 1944, showing total assets of $774,972.98, the entirety of which was declared to be intangibles. In calculating its "total taxable intangibles" appellant deducted the following from its total assets: United States Treasury Bonds of the face amount of $450,000; accrued interest thereon in the amount of $1,682.25; and other nontaxable or exempt property valued at $318,771.95. The aggregate amount

---

[2] By an amendment adopted in 1945, but not operative on the assessment date here involved, the last sentence of § 54:4–22 as quoted above was deleted. N. J. Rev. Stat. Cum. Supp., Laws of 1945, 1946, 1947, § 54:4–22.

[3] The return was on a form furnished by the taxing district and entitled "Personal Property Return of Stock Insurance Company for Year 1945 Under Section 54:4–22 of Revised Statutes."

of the property thus excluded was $770,454.20. The remainder, $4,518.78, was entered on the return as the total taxable intangibles. From this amount appellant deducted: $25,756.63 as "debts and liabilities certain"; $28,175.46 as "reserves for taxes"; and $758.13 as "proportion of loss and premium." There is no disagreement with these computations. As observed by the highest court below, these deductions "left no balance of assessable property subject to tax."

The taxing district therefore assessed appellant's property under the proviso in § 54:4–22 which directed an assessment of not less than 15 per cent of "the sum of the paid-up capital and the surplus in excess of the total of all liabilities" of appellant as shown by its annual statement for the preceding calendar year filed with the state department of banking and insurance. The manner of computation of the assessment is not explicit in the record. Moreover, the opinion of the highest court of New Jersey is subject to several interpretations as to the proper method of computing the assessment. The court stated that the assessment "may not be less in amount than 15 percent of the paid-up capital and surplus *as defined by the statute.*" (Italics added.) If by the phrase "as defined by the statute," the court referred to the language of the proviso in § 54:4–22, "paid-up capital and the surplus *in excess of the total of all liabilities*" (italics added), it would seem necessary to deduct liabilities from capital and surplus in determining the basis for the 15 per cent computation. The basis of computation would then be $496,999.70,[4] and the 15 per cent sum, $74,549.95.

---

[4] The financial statement for 1943 reflected the following items: paid-up capital $250,000; paid-in surplus $250,000; earned surplus $47,462.93; liabilities $50,463.23; United States Treasury Bonds and accrued interest of $452,526.06. Reserves amounted to $161,-047.74, not including reserves for federal income tax which are not shown in the record. It seems probable that if the New Jersey

The court subsequently stated that "The assessment may equal or exceed 15 percent of the paid-up capital and surplus, and does not necessarily have to be precisely the same, but . . . can not be less in amount than 15 percent of the paid-up capital and surplus." Such references to "paid-up capital and surplus," together with the court's characterization of the tax as laid on net worth, suggest that the assessment is computed against appellant's net worth of $547,462.93. On this basis, however, the 15 per cent sum would have been not less than $82,119.43, and the present assessment of less amount would not satisfy the court's interpretation of the statute as requiring a levy of not less than 15 per cent. For our disposition of this case, however, it is unnecessary to choose between these conflicting interpretations of the opinion of the court below.

Clearly the State of New Jersey has negatived any purpose to authorize a tax assessment against the appellant's United States bonds. The court below conceded that the securities involved were, at the time of the assessment, exempt from state, municipal or local taxation. It is equally clear, however, that in the computation of the assessment the face value of appellant's government bonds, together with the interest thereon, was in fact included.[5]

court did approve the construction of § 54:4–22 suggested above, it meant to authorize the deduction of nonreserve liabilities only. Both appellant and appellee have assumed in their briefs that if any deduction of liabilities from capital and surplus was authorized under the statute, only nonreserve liabilities were deductible.

[5] If under the proviso of § 54:4–22 "the total of all liabilities" of appellant is deductible from "the paid-up capital and the surplus," and the 15 per cent must be computed against the figure of $496,999.70, deduction therefrom of appellant's United States bonds and interest leaves only $44,473.64. If, however, the basis of computation is appellant's net worth of $547,462.93, then there is a

Contending that § 54:4–22 as thus applied contravenes paramount federal provisions, appellant sought cancellation of the assessment on appeal to the Division of Tax Appeals in the Department of Taxation and Finance of New Jersey. The Division's opinion recommending dismissal referred to the proceeding as "a personal property appeal." Its order of dismissal was reversed by the former New Jersey Supreme Court on writ of certiorari. 137 N. J. L. 444, 60 A. 2d 265. That court viewed the levy as an ad valorem tax on personalty; after concluding that the tax would be valid only if the bonds and interest were excluded from the computation, the court construed the tax statute as requiring such exclusion. This ruling was reversed by the Supreme Court of New Jersey as established under the present Constitution of the State. 1 N. J. 496, 64 A. 2d 341. The highest court of the state declared that the assessment was "against the intangible property" but "concluded that the tax levied . . . is not an ad valorem tax or property tax but rather is a . . . tax upon the net worth of the company." It held that such a tax, having been imposed without discrimination, was constitutionally permissible. From this decision the present appeal was taken. We noted probable jurisdiction, 28 U. S. C. § 1257 (2).

The assessment must fall as in conflict with § 3701 of the Revised Statutes, providing that "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority."

_____

remainder of $94,936.87 after deducting the government bonds and interest. But neither the appellee nor any of the courts below has sought to uphold the assessment of $75,700 as having been computed solely against this excess over bonds and interest. In fact it may be implied from appellee's brief that if the amount of federal bonds and interest must be deducted from net worth, the excess of net worth after such deduction is subject to assessment at the 15 per cent rate.

If we consider the assessment as a 15 per cent levy either against capital and surplus less liabilities or against entire net worth, we take as guides to our application of § 3701 the decisions of this Court on the related constitutional question of immunity in *Bank of Commerce* v. *New York City,* 2 Black 620 (1863), and the *Bank Tax Case,* 2 Wall. 200 (1865), which considered assessments under state taxing provisions not substantially distinguishable from New Jersey's § 54:4–22 as thus applied. The *Bank of Commerce* case involved an assessment levied upon the actual value of the capital stock, less the value of real estate, of a corporate taxpayer which had invested in United States securities all of its assets other than its realty. In holding the tax invalid as an interference with the federal borrowing power, the Court rejected the contention that the assessment should be sustained as a levy upon corporate capital represented by federal securities. In the *Bank Tax Case* this Court considered assessments levied against "the amount of . . . capital stock paid in or secured to be paid in, and . . . surplus earnings" of banking corporations which had invested all or a large part of their capital in government securities. As against the contention that this Court should regard as conclusive the state court's characterization of the tax as one laid on capital and surplus, it was held that the assessments were unconstitutional. The Court observed that

> "when the capital . . . thus invested is made the basis of taxation of the institutions, there is great difficulty in saying that it is not the stock thus constituting the corpus or body of the capital that is taxed. It is not easy to separate the property in which the capital is invested from the capital itself. . . . The legislature . . . when providing for a tax on . . . capital at a valuation . . . could not

but have intended a tax upon the property in which the capital had been invested. . . . such is the practical effect of the tax . . . ." 2 Wall. at 208–209.

And in *Bank* v. *Supervisors,* 7 Wall. 26 (1869), it was held that certain issues of United States notes were exempt from assessment under the statute considered in the *Bank Tax Case, supra,* in view of a congressional provision, which foreshadowed § 3701, that United States securities "shall be exempt from taxation by or under State authority." 12 Stat. 346. And see *Farmers Bank* v. *Minnesota,* 232 U. S. 516, 528 (1914); *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 512–513 (1907).

It matters not whether the tax is, as appellee contends, an indirect or excise levy on net worth measured by corporate capital and surplus or is, as appellant urges, a tax on personal property based on a valuation gauged by capital and surplus. Our inquiry is narrowed to whether in practical operation and effect the tax is in part a tax upon federal bonds. We can only conclude that the tax authorized by § 54:4–22, whether levied against capital and surplus less liabilities or against entire net worth, is imposed on such securities regardless of the accounting label employed in describing it.

The court below, describing the tax as levied on net worth and indirectly on capital and surplus measured in part by tax-exempt property, held it valid on the authority of *Tradesmens Nat. Bank* v. *Oklahoma Tax Comm'n,* 309 U. S. 560 (1940), and *Educational Films Corp.* v. *Ward,* 282 U. S. 379 (1931). The decision in the *Tradesmens Bank* case does not bear upon the present controversy. There the Court upheld a state tax statute adopted pursuant to an act of Congress authorizing state taxation of national banks. Moreover, the tax there considered, as well as that under scrutiny in the *Educational Films Corp.* case, was not measured in effect by the

amount of the taxpayer's federal securities or interest but was a franchise tax measured by net income.[6] The section here in question was not considered as imposing a tax on privilege or franchise by either the New Jersey Legislature [7] or the taxing officials [8] or by any of the courts below.[9] While we are not limited by the State's characterization of its tax, cf. *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 443 (1940), we likewise do not think the assessment can be sustained as one levied on a corporate franchise. In considering the similar tax on capital and earned surplus under review in the *Bank Tax Case, supra,* this Court declared that the levy was "imposed on the property of the institutions, as contradistinguished from a tax upon their privileges or franchises." 2 Wall. at 209.

If the assessment is considered to be 15 per cent of capital and surplus less liabilities or of entire net worth, we agree with the court below that the tax levied under § 54:4–22 does not impose a discriminatory burden on federal issues as did the tax statute against which § 3701 was invoked in *Missouri Ins. Co.* v. *Gehner,* 281 U. S. 313 (1930). But since the decision in *Bank of Commerce*

---

[6] In all other decisions in which a state tax has been upheld, against the contention that it was in effect levied on a corporate taxpayer's federal bonds or interest, the tax was a franchise levy, measured either by amount of bank deposits, *Society for Savings* v. *Coite,* 6 Wall. 594 (1868); *Provident Institution* v. *Massachusetts,* 6 Wall. 611 (1868), or by the market value of the taxpayer's shares, *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632 (1868), or by dividends declared or paid, *Home Ins. Co.* v. *New York,* 134 U. S. 594 (1890).

[7] See notes 1 and 2 *supra.*

[8] See note 3 *supra.*

[9] The highest court of New Jersey declared that its decision was required "whether the taxing statute is a franchise tax or a tax upon the net worth of the company, *which latter we hold the tax under the statute before us to be.*" 1 N. J. 502, 64 A. 2d 344. (Italics added.)

v. *New York City, supra,* it has been understood that a tax on corporate capital measured by federal securities may be invalid even though imposed without discrimination against federal obligations.

If, however, the assessment of $75,700 is viewed as if it were levied exclusively upon appellant's net worth remaining after deduction of government bonds and interest, the assessment would be discriminatory since it would be levied at the rate of over 79 per cent of appellant's assessable valuation of $94,936.87 rather than at the rate of 15 per cent prescribed by § 54:4–22. Such increased rate of assessment would result solely from appellant's ownership of federal issues. In the *Gehner* case, *supra,* this Court held that § 3701 was offended by a computation which allowed deduction of the full amount of the taxpayer's federal bonds yet at the same time pared down the net value of other allowable exemptions, to the taxpayer's disadvantage, solely because of such ownership of federal bonds. Consistently with the *Gehner* decision, we can only hold that § 3701 is violated by an automatic increase in the rate of assessment applied to appellant's valuation after deduction of federal bonds.

The result which is thus indicated is also required by the legislative purpose, which we have found in § 3701, "to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit." *Smith* v. *Davis,* 323 U. S. 111, 117 (1944).

The legislative purpose of § 3701 also required the exemption from assessment under § 54:4–22 of interest on federal securities which had accrued but was not yet paid. Cf. *Hibernia Savings & Loan Society* v. *San Francisco,* 200 U. S. 310 (1906). Congress on occasion has expressly declared an exemption from state taxation of

interest on federal securities,[10] and we do not find a contrary purpose disclosed by the omission from § 3701 of the phrase "and interest thereon."

The assessment for tax under § 54:4–22 of the New Jersey Revised Statutes as levied is in conflict with the paramount provision of § 3701 of the Revised Statutes. The decision of the Supreme Court of New Jersey is

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

I agree that New Jersey cannot tax United States bonds made tax-exempt by Congress. This Court has consistently held, however, that such bonds need not be excluded from computation of a justifiable state tax imposed on corporations created by or doing business within the state. A short time ago we said that "The power of a state to levy a tax on a legitimate subject, such as a franchise, measured by net assets or net income including tax-exempt federal instrumentalities or their income is likewise well settled." *Tradesmens Bank* v. *Tax Comm'n,* 309 U. S. 560, 564; and see cases there cited. I do not see how the Court's opinion here can possibly be reconciled with that principle, for it seems clear to me that this New Jersey tax as applied falls within such a classification.

The state law under which this tax was levied applies only to stock insurance companies organized under New Jersey laws. The first part provides for a tax on intangible property to be computed by a formula which expressly excludes tax-exempt bonds, as well as certain reserves, from the property subject to tax. To avoid the possibility that occasionally this formula might produce

---

[10] See 16 Stat. 272; 39 Stat. 1000, 1003; 40 Stat. 288, 291.

no tax at all, New Jersey added a proviso setting a minimum assessment of 15% of corporate net worth. The necessity of such a minimum is clear, for the statute also provides that "no franchise tax shall be imposed upon any insurance company included in this section." This tax on an assessment measured by 15% of net worth is the only New Jersey tax to which appellant, a stock insurance company created by and doing business in New Jersey, was subjected for the year in question. Thus, by the terms of the statute and in actual practice, this tax at least replaced a franchise tax. Certainly it was levied "on a legitimate subject," within the meaning of the *Tradesmens Bank* opinion. I can see no practical distinction between this New Jersey tax and a franchise tax, unless the Court is now departing from the sound principle of determining the constitutionality of a state tax "by its operation rather than by particular descriptive language which may have been applied to it." *Educational Films Corp.* v. *Ward,* 282 U. S. 379, 387. Yet only by making such a distinction constitutionally determinative can the New Jersey tax be invalidated. See *Tradesmens Bank* v. *Tax Comm'n, supra; Educational Films Corp.* v. *Ward, supra.* If New Jersey had set a minimum tax in dollars which exceeded the tax on appellant here, we could not say that the tax was an unreasonable charge for the advantages accorded appellant by the state. That the minimum tax actually enacted varies fairly with net worth, and that appellant happens to own United States bonds, should not require us to strike down this tax as unconstitutional. And there was certainly no purpose to put a heavier tax burden on appellant merely because it owned tax-exempt bonds. *Cf. Missouri Ins. Co.* v. *Gehner,* 281 U. S. 313, 318.

But even under the Court's contrary reasoning on that point, I think the tax should stand. It was levied on only $75,700 worth of appellant's property. Appellant con-

ceded in its brief that its "net worth" exceeded the value of its tax-exempt federal securities by $94,936.87.[1]  Thus the tax imposed on appellant did not have to touch its tax-exempt bonds.  The Court's opinion acknowledges, as it must, that New Jersey "clearly . . . negatived any purpose" to include them in the tax assessment.  A legislative purpose to exclude these bonds from assessment is express in the first part of the New Jersey statute.  A contrary purpose in the proviso under which appellant is taxed should not be drawn by this Court when appellant's tax-exempt bonds need not be touched by the tax.  The assessment of 15% of net worth leaves untaxed 85%

---

[1] The Court suggests that perhaps the statute should be construed as requiring liabilities other than reserves to be subtracted from net worth before the assessment is computed, in which case the excess over government bonds would be only $44,473.64.  I had not understood the appellant to raise such a question in New Jersey or here, nor did I know that appellant challenged the tax as being on too low an assessment.  Moreover, in discovering this supposed ambiguity in the statute the Court is supported only by the doubtful premise that the state court, in the absence of any allegation or proof that the tax levied was too small, would be required to recompute the tax itself and then either remand the case or construe the statute in such a way as to justify what may have been merely an arithmetical error.  For an instance in which a state court has expressly refused to do either, see *Missouri Ins. Co.* v. *Gehner,* 281 U. S. 313, 319.  Furthermore, such an interpretation would have absurd consequences.  Under it, a company could avoid taxation completely by merely borrowing a few million dollars two days before the operative date of assessment and paying it back two days afterwards: the net worth of the company would not be altered by this transaction, but the liabilities would be increased (and the assessment accordingly reduced) by the amount of the loan obtained.  As appellant concedes in its brief, subtracting liabilities from net worth (which is itself determined by subtracting liabilities from assets) would conflict with "administrative interpretation and practice."  It would also conflict with the state court's statement that the tax is upon net worth.  I cannot ascribe such a self-defeating interpretation to the highest court of New Jersey.

of the net worth, which more than covers the amount of the tax-exempt bonds. We cannot say that New Jersey did not intend to accomplish just this result by leaving 85% untaxed. Under these circumstances the decision in *Missouri Ins. Co.* v. *Gehner, supra,* on which the Court relies, does not bar upholding the New Jersey tax. The *Gehner* opinion recognized the power of the state to apply its tax rate to a company's net worth in excess of tax-exempt bonds.

Moreover, the New Jersey law does not discriminate against insurance companies owning government bonds. The state statute held invalid in the *Gehner* case had granted tax exemptions for statutory reserves, etc., but had deprived insurance companies of these exemptions to the extent that the companies owned tax-exempt federal bonds. This Court held such "discrimination" unconstitutional. But that holding can have no applicability to the New Jersey statute, under which federal bonds in no way deprive their owners of any state exemption. As we have pointed out, the New Jersey tax law did not increase appellant's burden merely because appellant owned tax-exempt bonds. Indeed, appellant's tax is substantially lower than if the funds invested in these bonds had been invested in non-exempt property.

I think the decision of the New Jersey court should be affirmed.