THE BANK COMMISSIONERS *vs.* THE WATERTOWN SAVINGS
BANK.

First Judicial District, Hartford, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Upon the settlement of the affairs of a savings-bank in this State, the
sureties of a defaulting treasurer are not entitled, upon any theory
or principle of subrogation, to recover back money which they
have been compelled to pay to make good the defalcation. The
amount so paid becomes an asset of the bank, like the money
which it replaced, and, together with all its other assets, should
be distributed pro rata, less the expenses of settlement, among the
depositors who have presented their claims within the time lim-
ited therefor.
The delivery by the depositors of their respective deposit-books to the
receiver of the bank, showing the condition of their accounts
therein, is a sufficient presentation of their claims.
General Statutes, §§ 3440, 3441, limiting the rate of dividends payable
by a savings bank, and providing for the accumulation of a surplus
as a contingent fund, were enacted for the protection of deposi-
tors, and are in no sense in conflict with the general proposition
that the income and profits of such a bank are a part of its de-
posits and belong to its depositors.

Argued October 6th—decided October 27th, 1908.

RESERVATION by the Superior Court in Litchfield
County, *Gager, J.,* upon an agreed finding of facts in re-
ceivership proceedings, to determine to whom moneys in
the hands of the receiver of a savings-bank belonged, after
the affairs of the bank had been substantially settled.
*Judgment advised for depositors.*

*Lucien F. Burpee,* for the Watertown Savings Bank and
its receiver.

*Michael J. Byrne,* for Emma J. Mattoon, executrix.

*Francis P. Guilfoile,* for Emil C. Margraff.

RORABACK, J.  In this case the Superior Court has reserved for the advice of this court the questions of law arising upon an agreed statement of facts.

The receiver of the defendant bank being ready to close his receivership, has on hand several thousand dollars for distribution, which certain persons, formerly depositors of the savings-bank, claim should be distributed to them. Certain other persons who were sureties on the bond of a defaulting treasurer of the bank, and who have been compelled to pay a larger sum to the receiver than remains for distribution, also claim that the money should be paid to them.  The receiver, therefore, asks in what manner and to whom he should distribute the money.

The facts agreed upon pertinent to this inquiry are substantially as follows: On or before September 10th, 1905, and before the appointment of the receiver, the savings-bank had suspended business, had collected its assets, had called upon its depositors to send in their deposit-books, and had paid to them the balance of their deposits, but without any interest since July 1st, 1903.  These payments were entered on each depositor's book and the book returned to him, but no interest was paid, computed, or entered upon the depositors' books after July 1st, 1903. After the appointment of the receiver on January 12th, 1906, the Superior Court limited the usual time for exhibition of claims against said bank, and within that time nearly all of the depositors presented to the receiver their deposit-books in the same condition as to entries hereinbefore described, that is, with no interest computed or entered on these books after July 1st, 1903.  "No claim was presented by any one in any other form, and no claim for any interest or for any stated amount was expressly made by any one."

Meantime an action was begun and prosecuted against the defaulting treasurer and his bondsmen, and final judgment secured against the treasurer for $13,011.37, and

against the bondsmen "jointly and severally for the sum of $10,000, or so much thereof as should be necessary to satisfy any deficiency unsatisfied by said treasurer upon said judgment against him, with costs." This judgment was rendered June 14th, 1905, and affirmed by this court December 15th, 1905. The defaulting treasurer's property was foreclosed and sold by the receiver in June, 1906, and that of the bondsmen between September, 1907, and April 1st, 1908. Property worth about $8,500 was taken from the bondsmen, but the judgment still remains unsatisfied to the amount of $1,000. The bond furnished by the defaulting treasurer and his sureties, as required by statute, was in the sum of $10,000, and conditioned that the treasurer should well and faithfully perform all the duties of his office and should fully account for the funds of the bank placed in his keeping.

The advice of this court is sought upon the following questions: 1. Whether the depositors had properly presented their claims upon their deposits since July 1st, 1903. 2. If these claims were properly presented, how should the receiver distribute the balance on hand? 3. Are the sureties on the bond of the defaulting treasurer entitled to this balance or any portion thereof?

When the receiver was appointed in January, 1906, the depositors' books showed that they had been paid the full amount of their deposits with interest thereon up to July 1st, 1903, and that no interest or dividends had accrued to them after that time. In February, 1906, the Superior Court limited a time for the exhibition of claims against said bank, of which the receiver gave notice to all of its depositors. In pursuance of said notice nearly all of the depositors delivered to the receiver their deposit-books, showing the true condition of their accounts with the bank.

It is quite clear that the depositors by such a presentation were not claiming the principal of their deposits, as

these had been fully paid. Actuated by a purpose to make a claim for this loss of income and profits, the depositors presented to the receiver their deposit-books as a claim against said bank. At this time it needed no computation or investigation for the receiver to ascertain that the depositors had received no income or return for their money for almost two years. Although these claims were not made in the form which would have been used by an experienced attorney, yet we think they embodied a claim made by the depositors for a just proportion of the balance of the income and profits, if any, derived from the business conducted by the bank. If the claims lacked certainty as to amount, the presentations in question placed in the hands of the receiver information which enabled him to understand the existence and character of the demands made by the depositors. It has long been settled by our decisions and practice that a formal presentation of a claim to an executor or administrator is not necessary. The language of our statute for many years has been that the creditor shall "exhibit his claim." General Statutes, § 333. It is not enough that the executor has in some casual way learned of the existence of the debt. It must be brought to his knowledge by some action of the claimant, that the claim is held against the estate. *Pratt* v. *Stoner*, 78 Conn. 310, 312, 313, 61 Atl. 1009; *Cothren's Appeal*, 59 Conn. 545, 549, 22 Atl. 297; *Brown & Bros.* v. *Brown*, 56 Conn. 249, 251, 14 Atl. 718. From the facts disclosed by the finding we feel warranted in reaching the conclusion that a sufficient presentation of these claims was made.

The Watertown Savings Bank was duly chartered under the laws of this State in 1893. The object of this institution is set forth in § 3 of its charter, which provides that "all deposits of money received by said corporation shall be used and improved to the best advantage, by loaning and investing the same in a manner not incon-

sistent with the laws of this state, and said corporation may dispose of the same as the interests of said corporation may require, and the income or profits thereof shall be applied as dividends among the persons making the deposits, their executors, and administrators in just proportion, with such reasonable deduction as may be chargeable thereon." 11 Special Laws, p. 383. These are all the provisions of the charter which relate to the question now under consideration. It is to be noticed that there is no capital stock and there are no stockholders who are entitled to receive profits from the business. It is clear that all these belong to the depositors, and nothing can properly be deducted therefrom except the reasonable expenses of transacting the business.

The sums of money which the defaulting treasurer withdrew, were taken out of the deposits received by the bank and the income and profits derived therefrom by loans and investments. They all belonged to the depositors. This money which the receiver now has for distribution has all the characteristics of the money which it replaced. Like the original deposits and their income or profits, it must be applied under the charter of the bank as above quoted. *Price* v. *Society for Savings*, 64 Conn. 362, 366, 30 Atl. 139; *Bunnell* v. *Collinsville Savings Society*, 38 Conn. 203, 206; *Morristown Institution for Savings* v. *Roberts*, 42 N. J. Eq. 496, 8 Atl. 315; *Huntington* v. *Savings Bank*, 96 U. S. 388.

Counsel for the bondsmen point to §§ 3440 and 3441 of the General Statutes, which are as follows: "The net income of any savings bank, in excess of one-eighth of one per cent. of its deposits, actually earned during the six months last preceding, and no more, may be semiannually divided among its depositors. No dividend shall exceed a rate of four per cent. per annum, except as provided in § 3441. No savings bank shall make any dividend, except as provided in § 3440, until its surplus shall have accumulated to an amount equal to three per cent. of its

deposits. Such surplus shall be kept as a contingent fund; but no savings bank shall carry to its contingent fund more than ten per cent. of its deposits; and any surplus beyond that amount shall be divided among the depositors entitled to such dividends, in sums of not less than one per cent. of its deposits."

It is claimed that "since the savings-bank is the creature of statute, there is no other legal means or method of making disposition of its funds, save strictly as provided by statute; and that the liability, legal or equitable, of the savings-bank to its depositor, is a fixed and constant relation that does not vary, whether the bank is or is not solvent." It is also contended that "the purpose of the surplus is to protect the depositor; but the law gives to the depositor no way of reaching the surplus. Indeed, our courts seem to sustain the view that the end and purpose of the deposits is to keep up the surplus."

It is true that the profits or income of savings-banks are not all payable at the same time or in the same way, and that they may be held by the bank as a fund until they have reached a specified amount. This is for the sole purpose of protecting depositors against unforeseen contingencies. There is nothing in these statutes which militates against the general proposition that the income or profits of savings-banks belong to the depositors and are a part of the deposits. In the end, it is the general spirit and purpose of the charters of savings-banks and of the laws of this State, that depositors, or their representatives, are entitled to all the pecuniary benefits arising from the deposits, less the reasonable expenses that may be chargeable thereon.

It is a little difficult to understand upon what theory these bondsmen rely to sustain their claim for this money now in the hands of the receiver. No principle was suggested upon which such a claim can be supported. The treasurer had taken from the bank money belonging to

its depositors. These claimants were sureties upon his bond. In an action against the defaulting treasurer and his bondsmen, judgment was rendered against these claimants for any deficiency which the principal failed to satisfy, not exceeding $10,000. This judgment, when recovered, was an asset of the bank as much as any loan or other investment. There was no person who had any right to this fund to which these claimants have in any way been subrogated.

It is a familiar principle that "the equity of subrogation is one which the surety is entitled to exercise against the *debtor*, but it does not give him the right to control the action of the *creditor*." Bispham's Principles of Equity (7th Ed.), § 338. Special circumstances may take the case out of this general rule, and give the surety a right to require the creditor to look to certain liens before calling upon the surety. No such conditions exist in the present case. It is manifest that the depositors in this bank have not received that part of the income which was appropriated by the treasurer and which was theirs according to law. When the receiver was appointed they had the right to claim it, and to demand that this income be paid out of the assets of the bank which he collected. By sustaining the claim of the sureties upon the bond, the depositors would be deprived of their just proportion of the dividends from the income or profits arising from the business conducted by the bank under its charter. The sureties upon the bond have, therefore, no pecuniary, interest in the money now held by the receiver, and no right to the relief they ask.

' The Superior Court is advised that all such depositors who made presentation of their claims as set forth in the finding, made a lawful exhibition of such claims; that the receiver should distribute the balance of money (after paying just charges) now in his hands, to such depositors as have presented their claims in the manner above

indicated; and that the sureties on the bond are not entitled to any portion of the balance of the money now in the hands of the receiver.

In this opinion the other judges concurred.