LOEWE et al. v. UNION SAVINGS BANK OF DANBURY.

(District Court, D. Connecticut. February 8, 1916.)

Nos. 1801, 1802, 1805, 1807.

1. ATTACHMENT ⬤178—PROPERTY SUBJECT TO ATTACHMENT—NECESSITY THAT DEBT BE "DUE."

Gen. St. Conn. 1902, § 880, provides for attachment when a debt is due a defendant in a civil action, and that from the date of leaving copy of the writ with the debtor any debt due from such garnishee shall be secured to pay any judgment recovered. Section 931 provides that, if judgment be rendered for plaintiff in any action by foreign attachment, all effects in the hands of the garnishee at the time of the attachment, or debts then due to defendant, shall be subject to the judgment. Section 3340 provides that the net income of any savings bank in excess of one-eighth of 1 per cent. of its deposits may be semiannually divided among its depositors; and sections 3441 and 3442 refer to this as a dividend, and provide that in declaring dividends the directors shall have power to discriminate between depositors, etc. *Held*, that where savings bank deposits were attached, and thereafter and before final judgment the depositors assigned the dividends or interest accruing on the deposits and which were declared after the attachment, the assignee and not the attaching creditors was entitled to such dividends, since for a debt to be "due" under the Connecticut decisions there must be an existing obligation for which the garnishee would be liable to the defendant in an action in the nature of debt or assumpsit, and savings bank depositors have no legal remedy to enforce the payment of interest until dividends are declared by the directors.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 528–534; Dec. Dig. ⬤178.

For other definitions, see Words and Phrases, First and Second Series, Due.]

2. GARNISHMENT ⬤115—INTEREST—LIABILITY OF GARNISHEE.

In Connecticut, unless a garnishee, in the absence of an express contract to pay interest, has mingled money attached in his hands with his own, he cannot be required to pay interest on it; but, if he has, the interest may be attached as an incident to the debt.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 234; Dec. Dig. ⬤115.]

At Law. Separate actions in the nature of scire facias by D. E. Loewe and others against the Union Savings Bank of Danbury, against the Norwalk Savings Society, against the South Norwalk Savings Bank, and against the Savings Bank of Danbury. Order denying certain relief sought.

See, also, 222 Fed. 342; 226 Fed. 294.

Daniel Davenport, of Bridgeport, Conn., and Walter Gordon Merritt, of New York City, for plaintiffs.

John R. Booth, of Danbury, Conn., for Union Savings Bank of Danbury.

John H. Light, of Norwalk, Conn., for Norwalk Savings Society and South Norwalk Savings Bank.

J. Moss Ives, of Danbury, Conn., for Savings Bank of Danbury.

William F. Tammany, of South Norwalk, Conn., and Martin J. Cunningham, of Danbury, Conn., for United Hatters of North America.

THOMAS, District Judge. These are actions in the nature of scire facias, brought pursuant to section 931 of the General Statutes of Connecticut, Revision of 1902, to enforce attachments by mesne process in the original actions upon which these actions are founded. The attachments were made pursuant to the provisions of section 880 of the General Statutes of Connecticut, Revision of 1902, and covered certain funds on deposit with these defendants—savings banks incorporated under charters from the Connecticut General Assembly.

[1] Before the rendition of final judgment in the original action in which the attachments were made, the defendants assigned to the United Hatters of North America, a voluntary association, the dividends or interest accruing on said deposits and which were declared after the attachment, and by virtue of said assignments said United Hatters of North America claim to be the owner of said dividends.[1] The association has appeared to defend these actions pursuant to an order heretofore entered herein under section 937 of the General

---

[1] It was stipulated between counsel that the transfers of the accounts of the defendants in the Savings Bank of Danbury were all made substantially as follows:

"Bethel, Conn., Nov. 9, 1903.
"Treasurer of the Savings Bank of Danbury:
"Pay John Phillips, Sec., or bearer, the whole amount standing to my credit, and charge the same on my deposit book No. 29989.

"Frederick E. Benedict.
"Witness: Michael Crowe."

"$819.23.                                        Danbury, Conn., April 18th, 1904.
"Savings Bank of Danbury:
"Pay Martin Lawlor, Sec'y, etc., or order, eight hundred and nineteen and 23/100 dollars, or so much as may be due on my deposit book, No. 27808.

"Theodore G. Bright.
"Witness: G. Fred Lyon."

And that the deposits in the Union Savings Bank of Danbury, the Norwalk Savings Society, and the South Norwalk Savings Bank were all transferred as follows:

"$502.92.                                            Danbury, Ct., Dec. 14, 1903.
"The Union Savings Bank of Danbury, Conn.:
"Pay to John Phillips, Sec'y, or order, five hundred and two and 92/100 dollars, and charge my account No. 20562.

"[Sign here]   Fred S. Blackburn.
"Witness: H. C. Shalvoy."

And that each transfer was accompanied by delivery of the deposit book of the defendant making the transfer.

Statutes of Connecticut, Revision of 1902 (see 226 Fed. 294), and has filed an answer in which it is alleged that the dividends or interest accruing and declared subsequent to the original attachment were not held by the attachment, but passed to it and became its property by virtue of the assignments. So the sole question in this proceeding is whether the interest or dividends which have accumulated in the hands of the several banks, and which would belong to the depositors but for the assignments, now belong to the judgment creditor by virtue of the original attachment, or to the assignee of the fund by virtue of the assignments which were made after the attachments.

Section 880 of the General Statutes, Revision of 1902, provides that where a *debt is due* from any person to the defendant in a civil action the plaintiff may insert in his writ a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least 12 days before the session of the court to which it is returnable with such debtor of the defendant, and that from the date of leaving such copy any *debt due* from such garnishee shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover. The liability of the garnishee is further defined in section 931 of the General Statutes of Connecticut, Revision of 1902, so as to include:

"All the effects in the hands of the garnishee at the time of the attachment, or *debts then due* from him to the defendant"

—excepting that in the case of a debt, legacy, or distributive share the liability of an executor, administrator, or trustee garnisheed shall extend to and include any debt, legacy, or distributive share *"due or to become due."*

So the question in the present case is as to the meaning of the words "debt is due" in section 880, and the words "debts then due" in section 931, and the answer to this question will furnish the answer to the proposition of law here involved. The meaning of these words has several times been before the Supreme Court of Errors of Connecticut for judicial ascertainment and definition. While it has always been the policy of the courts of Connecticut to liberally construe the statute, and not to restrict its application to *liquidated* debts, they have, nevertheless, at all times insisted that, in order that the debt sought to be attached should be "due," there should be an existing obligation for which the garnishee would be liable to the defendant in an action in the nature of assumpsit or debt. Thus, in Fitch v. Waite, 5 Conn. 117, 122, it was held that:

"The moment of service is the precise period when a debt is attached, and if it be then existing it is secured by the process; but if it does not then exist no lien is created, as the operation of an attachment, from its nature, is immediate, and not prospective. A future liability is not attachable, for the conclusive reason that it is not a debt due."

To the same effect is Coburn v. City of Hartford, 38 Conn. 290, where it was held that there must be an "existing debt" when the attachment is made, although it might be payable in the future. Again, in Holcomb v. Town of Winchester, 52 Conn. 447, 52 Am. Rep. 609, it was held:

230 F.—20

"That the word 'debt,' as used in the law of garnishment (as the process is elsewhere usually termed), includes only legal debts, or causes of action for which debt or assumpsit may be maintained."

Such also is Sand Blast File Sharpening Co. v. Parsons, 54 Conn. 310, 313, 7 Atl. 716, where the court said that the word "due," as used in the foreign attachment statute, imported an existing obligation and that where there is a condition precedent to the liability there is no existing indebtedness which can be garnisheed.

Another instructive case is Cunningham Lumber Co. v. N. Y., N. H. & H. R. R. Co., 77 Conn. 628, 60 Atl. 107. That was the case of a written contract for labor and materials which made no provision as to the time of payment and in which nothing was due until the contract was performed. It was held that there was nothing to attach until the contract was performed.

And in the very recent case of Ransom v. Bidwell, 89 Conn. 137, 140, 93 Atl. 134, there is a definite recognition of the principle that the obligation of the garnishee must be certain as to the *liability to pay* although the *amount* of the indebtedness is one which can be fairly investigated and determined in an action of scire facias based upon the attachment already made.

[2] In line with the precedents cited are Woodruff v. Bacon, 35 Conn. 97, Candee v. Skinner, 40 Conn. 464, Phœnix Insurance Co. v. Carey, 80 Conn. 426, 68 Atl. 993, and Cox v. Cronan, 82 Conn. 175, 176, 72 Atl. 927, 135 Am. St. Rep. 268. The general conclusion of law to be drawn from these decisions is that, unless a garnishee (in the absence of an express contract to pay interest) has mingled the money attached in his hands with his own, he cannot be required to pay interest on it; but, if he has, the interest may be attached as an incident to the debt.

And this brings us to the vital question involved: Were these banks (in the absence of an express contract to pay interest) under *legal obligation* to pay these depositors interest on their deposits as an incident of the deposit, and was there any legal remedy open to the depositors at the time of the attachments to enforce such obligation? In my opinion each of these questions must be answered in the negative. Savings banks, as they exist in Connecticut, are held to be incorporated agencies of the depositors for their benefit, and a person making a deposit in a savings bank becomes substantially a part owner of all the assets of the bank. This was held in Osborn v. Byrne, 43 Conn. 155, 160, 21 Am. Rep. 641, where it was said that a savings bank is an incorporated agency for receiving and loaning money on account of the owners; it has no stock and no capital, and is merely a place of deposit, where money can be left to remain or be taken out at the pleasure of the owner, and that—

"the depositors in savings banks bear the same relation to each other and to the assets of the bank that stockholders in other monetary institutions do to each other and to the property of the bank."

A like view of the subject is taken in Coite v. Society for Savings, 32 Conn. 173, Bunnell v. Collinsville Savings Society, 38 Conn. 203.

9 Am. Rep. 380, and Price v. Society for Savings, 64 Conn. 362, 366, 30 Atl. 139, 42 Am. St. Rep. 198.

Interest was not due the depositors of the banks named as garnishees until declared, either under their charters or the statutes of Connecticut limiting the rate of dividends payable to depositors. Revision of 1902, §§ 3440, 3441, and 3442. These sections, which were enacted for the protection of depositors—Bank Commissioners v. Watertown Savings Bank, 81 Conn. 261, 70 Atl. 1038—are as follows:

"Sec. 3440. *Dividends.* The net income of any savings bank, in excess of one-eighth of one per cent. of its deposits, actually earned during the six months last preceding, and no more, may be semiannually divided among its depositors. No dividend shall exceed a rate of four per cent. per annum, except as provided in section 3441.

"Sec. 3441. *Surplus.* No savings bank shall make any dividend, except as provided in section 3440, until its surplus shall have accumulated to an amount equal to three per cent. of its deposits. Such surplus shall be kept as a contingent fund; but no savings bank shall carry to its contingent fund more than ten per cent. of its deposits; and any surplus beyond that amount shall be divided among the depositors entitled to such dividends, in sums of not less than one per cent. of its deposits.

"Sec. 3442. *Discrimination in Dividends.* In declaring dividends the directors of savings banks shall have power to discriminate between deposits of one thousand dollars or less, and those over that sum. Such discrimination shall not exceed one per cent. per annum, and if, at any time, a discrimination becomes necessary, it shall be made in favor of those deposits which are less than one thousand dollars."

This interest is in the nature of a dividend; in fact, it is a dividend, and is expressly treated as such by the statutes quoted, and until declared in the way pointed out by the statutes (in the absence of a contract) it is not a debt which may be collected by legal proceedings in the nature of assumpsit or debt. The only remedy of a depositor for the unlawful neglect of the trustees of a savings bank to declare a dividend which had been earned would clearly seem, as in the case of a corporation with capital stock, to be an equitable proceeding to compel the trustees to declare a dividend, as distinct from and separate from the fund upon which it is declared, and until that is done it cannot and does not become the individual property of the depositor. This principle is clearly recognized in Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, at page 207, 90 Atl. 369, the case of a receivership of a trust company with a savings bank department, where in the course of the opinion the court said:

"As we understand the facts of this case, the several savings department depositors have not made their deposits upon a special contract to pay them a stated rate of interest. If our understanding be correct, the savings department depositors are not entitled to interest or to dividends upon their deposits beyond the last declaration of dividend."

Clearly, in the light of the authorities cited, the attaching creditors acquired no more or greater rights than the depositors held at the time of the attachments. If, through defalcation, or unfortunate investments, or depreciation of securities, the assets of a savings bank become so impaired that the trustees could not legally declare the dividends, the depositors would share in the loss, and would have no remedy either in law or equity to compel the payment of dividends (au-

thorities supra), and if in such case they would be without a remedy, I fail to see how the attaching creditors acquire any rights by virtue of these attachments. The liability to pay the dividend was clearly subject to a condition precedent.

My conclusion therefore is that all interest accruing after the attachments belongs to the assignee by virtue of the assignments, and not to the attaching creditors.

Let an order be drawn in accordance with this opinion.