Taft, J.
The question to be decided is whether, in ascertaining and assessing “the value of the property representing the capital employed by [an incorporated] financial institution, not divided into shares,” pursuant to Section 5412, General Code, the Tax Commissioner must eliminate federal securities owned by such institution in computing “the aggregate amount of the capital, the surplus or reserve fund and the undivided profits” of such institution.
It should be observed that the word ‘‘capital,’’ when used with reference to a corporation, may be used to describe at least three different things. For example, it may be used (1) to describe all the property or assets of the corporation (see National Bank v. Commonwealth, 76 U. S. [9 Wall.], 353, 19 L. Ed., 701, 702), (2) to describe a bookkeeping figure representing a part or all of the net worth of the corporation (Missouri, ex rel. Missouri Ins. Co. v. Gehner, Assessor, 281 U. S., 313, 74 L. Ed., 870, 50 S. Ct., 326), and (3) to describe part or all of the property interest in the corporation which belongs to its shareholders or other owners.
The difference between the first and third of the above-mentioned uses of that word is well demonstrated in the opinion by Mr. Justice Miller in National Bank v. Commonwealth, supra, where it is said: “* * * it has been established as the law governing this court that the property or interest of a stockholder in an incorporated bank, commonly called a share, the shares in their aggregate totality being called sometimes the capital stock of the bank, is a different thing from the monied capital of the bank held and owned by the corporation. This capital may consist of cash, or of bills and notes discounted, or of real *128 estate combined with these. The whole of it may be invested in bonds of the government, or in bonds of the states, or in bonds and mortgages. In whatever it may be invested it is owned by the bank as a corporate entity, and not by the stockholders. A tax upon this capital is a tax upon the bank, and we have held that when that capital was invested in the securities of the government it could not be taxed, nor could the corporation be taxed as the owner of such securities.
“On the other hand, we have held that the shareholders, or stockholders, by which is meant the same thing, may be taxed by the states on stock or shares so held lay them, although all the capital of the bank be invested in federal securities * * (Emphasis added.)
Considerable care must therefore be used in determining what the word “capital” means in each instance in which it is used in the statutes here involved.
Before analyzing the statutes involved, it will also be helpful to state several basic propositions of law which seem to be well settled.
1. A state cannot levy a property tax on federal securities.
2. A state cannot levy a property tax against a corporation on its capital or on its net worth without excluding federal securities in the computation of such capital or net worth. In the absence of such an exclusion, such a tax is regarded in effect as being a tax on the federal securities. Missouri, ex rel. Missouri Ins. Co. v. Gehner, Assessor, supra; Farmers and Mechanics Savings Bank of Minneapolis v. Minnesota, 232 U. S., 516, 58 L. Ed., 706, 34 S. Ct., 354; and New Jersey Realty Title Ins. Co. v. Division of Tax Appeals, 338 U. S., 665, 94 L. Ed., 439, 70 S. Ct., 413.
3. On the other hand, a state may levy a property tax on the ownership interests of the shareholders of a corporation, even though all the assets of the corpor *129 ation are federal securities and even though the net worth of the corporation is used as the measure of the value for such taxation of the ownership interests in the corporation. See for example Cleveland Trust Co. v. Lander, 184 U. S., 111, 46 L. Ed., 456, 22 S. Ct., 394, affirming 62 Ohio St., 266, 56 N. E., 1036; Aberdeen Bank v. Chehalis County, 166 U. S., 440, 41 L. Ed., 1069, 17 S. Ct., 629; National Bank v. Commonwealth, supra; and Des Moines National Bank v. Fairweather, Mayor, 263 U. S., 103, 68 L. Ed., 191, 44 S. Ct., 23.
As stated in the leading case of Van Allen v. Assessors, 70 U. S. (3 Wall.), 573, 583, 18 L. Ed., 229:
it* * * £he tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. This is familiar law, and will be found in every work that may be opened on the subject of corporations. A striking exemplification may be seen in the case of Queen v. Arnoud [9 Adolph & E. N. S., 806]. The question related to the registry of a ship owned by a corporation. Lord Den-man observed: ‘It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners.’
‘ ‘ The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the cor *130 poration after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to taxation by the states, under the limitations prescribed * * V’
Furthermore, merely because a statute requires a corporation primarily to pay a property tax on the ownership interests of its shareholders, such tax is not necessarily a tax on the property of the corporation. See for example Cleveland Trust Co. v. Lander, supra; Aberdeen Bank v. Chehalis County, supra; and Des Moines National Bank v. Fairweather, Mayor, supra.
As stated in the opinion in the leading case of National Bank v. Commonwealth, supra:
“But it is strongly urged that it is to be deemed a tax on the capital of the bank, because the law requires the officers of the bank to pay this tax on the shares of its stockholders. Whether the state has the right to do this we will presently consider, but the fact that it has attempted to do it does not prove that the tax is anything else than a tax on these shares. It has been the practice of many of the states for a long time to require of its corporations, thus to pay the tax levied on their shareholders. It is the common, if not the only, mode of doing this in all the New England states, and in. several of them the portion of this tax which should properly go as the shareholder’s contribution to local or municipal taxation is thus collected by the state of the bank and paid over to the local municipal authorities. In the case of shareholders not residing in the state, it is the only mode in which the state can reach their shares for taxation. We are, therefore, of the opinion that the law of Kentucky is a tax upon the shares of the stockholder.”
As to the Society for Savings, the answer to the ques *131 tion, whether the tax provided for by Section 5408, General Code, may be levied without excluding federal securities from the computation provided for in Section 5412, General Code, depends on whether the tax is or is not on the property of the corporation which is the owner of those federal securities, or on part or all of its net worth. This in turn depends upon the meaning of the words in Section 5408. General Code, “the capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares, or which has no capital stock.” Admittedly,, the capital of the Society for Savings is not divided into shares and it has no capital stock.
In considering these statutory words, the question immediately arises as to whose “capital” or whose “property” is to be taxed. Is it the capital or property of the financial institution or is it the capital or property of the owners of the financial institution?
On a hasty reading of these words, it might appear reasonably arguable that, standing alone, these words could be given either meaning.
However, if these statutory words are examined with reasonable care, it is difficult to comprehend how “capital employed, or the property representing it, in a financial institution” could properly be used to describe capital or property of and belonging to such institution. It is apparent from a reading of Section 5412, General Code, that these words could not have been intended to describe all the assets of the bank. That section provides for assessing “the value of the property representing the capital employed by such financial institution * * * at the aggregate amount of the capital, the surplus or reserve fund and the undivided profits.” So far as the corporation is concerned, such an amount is a mere bookkeeping figure and is not represented by any property of the institution. See Southern Gum Co. v. Laylin, 66 Ohio St., *132 578, 596, 64 N. E., 564. The property of the institution is an important factor in determining what it is but there is another equally important factor in its determination, that is, the debt obligations of the institution including its deposit obligations. On the other hand, the interests of the owners of the corporation are as to them a species of intangible property and are sometimes described as their capital investment in the corporation or the capital which the owners have “in” the corporation. As so used, such “capital employed # * * in ’ ’ the corporation is always regarded as a species of intangible property belonging to such owners. As to them, their intangible property interest in the corporation may well be said to be “property representing” their “capital employed * * * in” the corporation.
Furthermore, the General Assembly clearly disclosed that it knew how to use the word “capital” to describe the capital of the corporation. Thus, after referring to “the capital employed * * * in a financial institution,” it used the words “the capital of which is not divided into shares, or which has no capital stock.” If it had intended the words “the capital employed * * * in a financial institution ’ ’ to mean ‘ ‘ the capital of” such institution, it could easily have said “the capital of a financial institution [which is] not divided into shares” instead of “the capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares,” thus eliminating the use of at least nine words and clearly expressing that intent. The General Assembly did not do that. By using the words ‘ ‘ capital employed * * * in” instead of “capital of” a financial institution at the same time that it showed that it knew how to use the words “capital of” such an institution, the General Assembly clearly indicated an intention to distinguish between the capital of or belonging to such institution and the capital of and belonging to the owners and employed in the institution.
*133 In addition, when the whole of Section 5408, General Code, is read, it is apparent that it is the capital or property of the owners of the institution and not that of the institution which the General Assembly intended to describe by the use of the words “the capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares, or which has no capital stock.”
Section 5408, General Code, deals with three distinct objects of taxation:
(1) “Shares of * * * stockholders in a financial institution * * * incorporated * * * the capital stock of which is divided into shares. ’ ’
(2) “Shares of * * * stockholders in an unincorporated financial institution * * * the capital stock of which is divided into shares held by the owners of such financial institution.”
(3) “The capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares, or which has no capital stock.”
As to the first two objects of taxation, it is clear that the property intended to be taxed is that of the owners of the financial institution, that is, its shareholders, and not the property of the financial institution. It would not be reasonable to impute to the General Assembly an intent, with respect to the third object of taxation there dealt with, to provide for taxing the property of the financial institution, instead of the property of the owners of the financial institution, unless the language used clearly required the imputation to the General Assembly of such an inconsistent intent.
With respect to statutory provisions somewhat similar to Section 5409, General Code, it is said in the opinion in Des Moines National Bank v. Fairweather, Mayor, supra, at pages 110 and 111:
“As construed by the Supreme Court of the state, the statute as a whole contemplates * * # that the *134 shares be assessed to the stockholders as their property ; and as illustrating that the statute makes a clear distinction between the shares and the property of the bank, the court'points to the provision which requires that the real estate be assessed against the bank and to the succeeding provision which declares that ‘the property of such corporation shall not be otherwise assessed.’ This, without more, seems completely to refute the contention that what the statute really directs is an assessment of the bank’s property instead of the stockholders’ shares.”
Likewise Section 5412, General Code, makes it apparent that the General Assembly intended to tax the property of the owners of financial institutions with respect to all three of the above-mentioned objects of taxation dealt with in Section 5408, General Code. Thus the first sentence of that section provides for a uniform manner of ascertaining and assessing the amount at which the property is to be taxed with respect to all three of those objects of taxation.
Also, that sentence obviously regards “shares of stockholders in a financial institution [as appears from Section 5408, General Code, these are the “shares” meant] ” which has shares as having a taxable equivalent in a financial institution which has no shares. It describes that taxable equivalent as “the value of the property representing the capital employed by [not “of”] such financial institution, not divided into shares.” “Shares of stockholders in a financial institution” obviously are evidence of and represent “capital employed by” a financial institution where it has shares. See Section 5408, General Code.
The legislative intent, that the words “capital employed in” or “by” a financial institution not having-shares should describe the intangible property interest of the owners of such an institution just as the words *135 “shares in” do, is further demonstrated by the words of Section 5638-1, General Code, levying the tax on “the kinds and classes of intangible property * * * enumerated” including “shares in and capital employed by financial institutions.”
Such conclusion is further fortified by the last sentence of Section 5412, General Code, which deals with financial institutions having only withdrawable shares. By the provisions of Section 5324, General Code, such shares are defined as “deposits”; and, in describing the first of the three above-mentioned objects of taxation dealt with in Section 5408, General Code, the shares of such institutions are expressly excepted from the shares of the classification of financial institutions there involved. Under Section 5406, General Code, those withdrawable shares must be returned as deposits. Under the first sentence of Section 5412, General Code, their amounts are assessed for taxation as deposits but not as “shares.” However, the last sentence of Section 5412, General Code, provides for their assessment also as shares and states with respect to them that “such assessment of shares shall exclude the capital stock thereof * # * [already assessed as deposits] but shall include the surplus or reserve and undivided profits # * First Federal Savings & Loan Assn. of Warren v. Evatt, Tax Commr., 143 Ohio St., 243, 54 N. E. (2d), 795.
Our conclusion is that the words, ‘ ‘ capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares, or which has no capital stock” as found in Section 5408, General Code, the words “the value of the property representing the capital employed by such financial institution, not divided into shares ’ ’ as found in Section 5412, General Code, and the words “capital employed by financial institutions” as found in Section 5638-1, General Code, were intended by the General Assembly *136 in each of those sections to describe the intangible property interests of ownership in a financial institution and not to describe the capital or any of the property of or belonging to such an institution. It follows that, where a financial institution without capital divided into shares or without capital stock is a corporation, the General Assembly indicated an intent to impose a tax upon the intangible property interests of ownership of the owners of the corporation, and not a tax upon the capital of or any property of or belonging to the corporation. The Society for Savings is such an incorporated financial institution.
However, it is argued that such a legislative intention cannot be given effect because there is no statutory provision which would enable the Society for Savings to secure reimbursement from those whose property would be taxed for the tax thereon that the Society for Savings would be required to pay.
In Sections 5672 and 5673, General Code, provisions are made to insure reimbursement from its shareholders by a financial institution on account of taxes paid by it which were assessed on its nonwithdrawable shares. Likewise provisions to insure reimbursement on account of payment by a financial institution of taxes assessed upon its deposits as taxable property of its depositors and its withdrawable shares as taxable property of its shareholders are made in Sections 5673-1 and 5673-2, General Code. However, it is arguable that, unless these latter two sections are given a broader construction than their words appear to justify, there is no specific statutory provision which would enable an incorporated financial institution, the capital stock of which is not divided into shares or which has no capital stock, to secure reimbursement from those who are or may be owners of the intangible property representing the capital employed by such owners in the corporation. In our opinion, such a *137 provision is not necessary to enable such a financial institution to secure such reimbursement. Citizens National Bank v. Commonwealth of Kentucky, 217 U. S., 443, 54 L. Ed., 832, 30 S. Ct., 532; Aberdeen Bank v. Chehalis County, supra; and National Bank v. Commonwealth, supra.
With respect to that species of intangible property which represents the ownership interests in a corporation, the capital of which is not divided into shares or which has no capital stock, payment by the financial institution of the tax will always in effect amount to payment by those who are the beneficial owners of such intangible property. Such payment will necessarily reduce the amount, which the corporation will have available for payment of interest to depositors or holders of withdrawable shares and which will be available for protection of their deposits or stock claims and for distribution to them in the event of liquidation of the corporation. Thus, the financial institution, which pays the tax on their property interests in the corporation, will always be able to reimburse itself by reducing the ultimate value of the property interests of 'those who are the only ones who can have any claim to benefit from the ownership interests taxed.
Payment by the corporation of the tax on their intangible ownership interests in the corporation will necessarily reduce, to the extent of the payment made, those funds available for payment of interest on their deposits, and will likewise reduce the amount available only to them in the event of liquidation of the corporation. In the instant ease, it appears that there was available for payment of interest on deposits more than enough to pay the taxes assessed against the owners of the “capital employed in” and “by” the Society for Savings as measured by the provisions of Section 5412, General Code, for assessment of that *138 “capital.” That capital, as Well as their deposit claims, was owned by the depositors.
The decision actually rendered by this court in Collett, Treas., v. Springfield Savings Society, 56 Ohio St., 776, 49 N. E., 1109 (affirming without opinion 13 C. C., 131, 7 C. D., 146), is not inconsistent with such a conclusion.
In the opinion of Bank Commissioners v. Watertown Savings Bank, 81 Conn., 261, 70 A., 1038, it is said:
“It is true that the profits or income of savings-banks are not all payable at the same time or in the same way, and that they may be held by the bank as a fund until they have reached a specified amount. This is for the sole purpose of protecting depositors against unforeseen contingencies. There is nothing in these statutes which militates against the general proposition that the income or profits of savings-banks belong to the depositors and are a part of the deposits. In the end, it is the general spirit and purpose of the charters of savings-banks and of the laws of this state, that depositors, or their representatives, are entitled to all the pecuniary benefits arising from the deposits, less the reasonable expenses that may be chargeable thereon.”
In Barrett v. Bloomfield Savings Institution, 64 N. J. Eq., 425, 54 A., 543 (“affirmed, for the reasons stated,” 66 N. J. Eq., 431, 57 A., 1131), it is said on page 434 in the opinion in quoting with approval from the opinion in Hannon v. Williams, 7 Stew Eq., 255:
“ ‘In a savings bank the depositors bear, in great degree, the same relation to each other and to the property of the bank as do the stockholders in other monetary institutions. To the corporation itself they occupy the double relation of stockholders and creditors. In prosperity they are the stockholders among whom the profits are divided. In case of insolvency they are the creditors, and usually the only creditors, *139 among whom the remaining assets are to be distributed.’ ”
In Huntington v. Savings Bank, 96 U. S., 388, 24 L. Ed., 777, it is said in the opinion by Mr. Justice Strong: “* * * the primary idea of a savings bank has been, that it is an institution in the hands of disinterested persons, the profits of which, after deducting the necessary expenses of conducting the business, inure wholly to the benefit of the depositors, in dividends, or in a reserved surplus for their greater security.”
In Lewis, Admr., v. Lynn Institution for Savings, 148 Mass., 235, 19 N. E., 365, 12 Am. St. Rep., 535, 1 L. R. A., 785, it is said on page 243 in the opinion by Allen, J.:
“ * * * the fundamental idea has never been departed from, that all the funds and investments of a savings bank are held exclusively for the benefit and security of the depositors. This idea was, and still is, the corner stone of the whole system. There is no corporation, with any purpose or possibility of profit to itself, independently of the depositors; but the latter are to share whatever profit may be made in just proportion among themselves. * * * ”
In Cogswall v. Rockingham Ten Cents Savings Bank, 59 N. H., 43, it is said in the opinion by Clark, J.: “The assets of savings-banks consist of loans of money made by them for the benefit of their depositors, from whom the money was derived, and correspond to the capital stock in banks of discount, and depositors in savings-banks stand in the same relation to the assets of the bank as stockholders to banks of discount. ’ ’
See also Worcester County Inst. for Savings v. City of Worcester, 10 Cushing (Mass.), 128, and Providence Inst. for Savings v. Gardner, 4 R. I., 484, indicating that the depositors of an incorporated financial institution having no capital stock, in addition to being *140 creditors of the corporation, have ownership interests in snch corporation corresponding to the ownership interests of the shareholders in an incorporated financial institution having shares of capital stock.
Thus, the ownership interests of the depositors in the corporation and not any capital or property of or belonging to the corporation are the property which is to be taxed pursuant to Section 5408, General Code, assessed pursuant to Section 5412, General Code, and upon which the two-mill tax is levied under Section 5638-1, General Code; and it appears that the corporation, although required to pay the tax, will, in doing so, be imposing the full burden, of that tax on those whose property interests are taxed.
It is further argued, in effect, that the value of the interests of a depositor in the Society for Savings can never rise above the amount of his deposit unless the corporation goes into liquidation, that anyone by making a deposit can secure interests equal to that of an existing depositor having a deposit of the same amount, and that therefore a depositor’s interests cannot be subjected to taxation at an amount in excess of the amount of his deposit.
This argument might be persuasive if it were true that the property interest of a shareholder of a corporation could not be taxed at an amount equal to the book value of his shares in the corporation where such book value exceeded the actual value of the shares. We do not believe that any such contention could or even would be made. The book value of shares of stock may be more or less than the value of such shares. It may be much more. Opdyke v. Security Savings & Loan Co., 157 Ohio St., 121, 148, 105 N. E. (2d), 9.
On the other hand, as to a depositor in a corporation such as the Society for Savings, it is not likely that the total of the amount of his deposit plus the amount of *141 the book value of his ownership interest as a depositor (this total being the book value of all his interests in the corporation) will ever be much more than what he can withdraw in cash at any time. When taxed on that total, i. e., the book value of all his interests in the corporation rather than only on the lesser withdraw-able amount of his deposit, a depositor of such corporation is not exposed to as great a taxation hazard as is a shareholder of a bank, who may be taxed on the book value of his shares even though such shares have no withdrawable value and have a realizable market or even actual value very much below their book value.
Unlike in Home Savings Bank v. Des Moines, 205 U. S., 503, 51 L. Ed., 901, 27 S. Ct., 571, our statutes do not justify our reaching a conclusion in the instant case similar to that reached by the Iowa Supreme Court in that case, that the taxes are levied on the corporation. As hereinbefore pointed out, the property to be taxed under our statutes is “the capital employed * * * in” or “by” a financial institution, that is, the intangible property interests of ownership of the owners of the institution representing that capital, not the capital of the financial institution. The “taxes” here involved are “levied on * * * lands and classes of intangible property * * * enumerated,” including “shares in and capital employed by [not capital of] financial institutions”; and, as hereinbefore pointed out, the General Assembly clearly indicated an intention that it is the capital of the owners of the institutions and not of the institutions that is to be taxed. See Sections 5408 and 5412, General Code.
As we view it, the Des Moines case holds merely that the fact, that a bank may in effect reimburse itself from its shareholders on account of a tax levied against it on its net worth, will not justify the conclusion that, in computing such net worth, it is unnecessary to exclude federal securities. Here, unlike in *142 that case, the taxes are not levied against the corporation on the capital or net worth of the corporation but are levied against the ownership interests of the owners of the corporation, whether or not such ownership interests are evidenced by shares or capital stock.
As stated on page 518 in the opinion in that case:
“The tax assessed to shareholders may be required by law to be paid in the first instance by the corporations themselves, as the debt and in behalf of the shareholder, leaving to the corporation the right to reimbursement for the tax paid from their shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him. National Bank v. Commonwealth, 9 Wall., 353; Lionberger v. Rouse, 9 Wall., 468; Aberdeen Bank v. Chehalis County, 166 U. S., 440; Merchants Bank v. Pennsylvania, 167 U. S., 461; Cleveland Trust Co. v. Lander, 184 U. S., 111. The theory sustaining these cases is that the tax was not upon the corporations’ holdings of bonds, but on the shareholders ’ holding of stock, and an examination of them shows that in every case the tax was assessed upon the property of the shareholders and not upon the property of the corporation. There is nothing in them which justifies the tax under consideration here, levied, as has been shown, on the corporate property.”
It may be observed that the Des Moines case involved “a tax * * * levied under a law * * * which provided that ‘shares of stock of state * * * banks * * * shall be assessed to such banks * * * and not to the individual stockholders.’ ” At the same time, the statutes of that state expressly provided that shares of stock of national banks should be assessed to the individual stockholders.
That Farmers & Mechanics Savings Bank of Minneapolis v. Minnesota, supra, is not applicable appears from the following in the court’s opinion:
*143 “The Supreme Court of Minnesota held that this section imposed * * * a property tax, and that the surplus of savings banks as thus determined is taxable property. This construction is not questioned here; perhaps is not open.to question.” (Emphasis added.)
Likewise, the cases of Missouri, ex rel. Missouri Ins. Co., v. Gehner, Assessor, supra, and New Jersey Realty Title Ins. Co. v. Division of Tax Appeals, supra, each involved the levy of a tax against a corporation on part or all of the net worth of the corporation. As herein-before pointed out, the taxes in the instant case are not levied on any part of the net worth of the financial institutions but are levied on the interests of the owners of such institutions in the capital of such institutions, whether evidenced by shares of stock or not so evidenced.
The decision of the Board of Tax Appeals is reversed and the order of the Tax Commissioner is affirmed.

Decision reversed.

Weygandt, C. J., Middleton, Zimmerman and Lamneck, JJ., concur.